UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**JAMES GRANDBERRY,**
      **Plaintiff,**

    v.                                        Case No. 19-C-0689

**SL HARBOUR VILLAGE, LLC,**
      **Defendant.**

---

## DECISION AND ORDER

Plaintiff James Grandberry alleges that his former employer, SL Harbour Village, LLC, terminated his employment because of his race and age, and because he complained about not being paid wages for hours he worked. He brings claims under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, 42 U.S.C. § 1981, and the Wisconsin Fair Employment Law. He also brings a claim under the Wisconsin Wage Payment and Collection Law to recover the wages he contends he is owed for a period in which he was suspended and did not work. Before me now is Harbour Village's motion for summary judgment. *See* Fed. R. Civ. P. 56.

## I. BACKGROUND

During the time relevant to this suit, Harbour Village operated a senior living facility in Greendale, Wisconsin. Grandberry, an African American male, worked at the facility as an Assisted Living Attendant between June 20, 2016 and October 6, 2017, when he was terminated.

The events that led to Grandberry's termination occurred on October 4, 2017. That day, Grandberry was working the 3:00 p.m. to 11:00 p.m. shift in the facility's memory-care unit, which assisted residents who tended to elope or become confused. Grandberry

was working alongside a second Assisted Living Attendant, Jill Bayer. Together, they were responsible for keeping track of all the residents within the unit. Grandberry and Bayer replaced two workers who had just completed the 7:00 a.m. to 3:00 p.m. shift, Janell Tatum and Kim Mims.

At around 2:55 p.m., just before the start of Grandberry and Bayer's shift, Mims helped LZ,[1] a resident who suffered from dementia and who was unable to walk or stand without a wheelchair, onto the toilet in one of the unit's bathrooms. This bathroom was typically used only for emergency situations and was not LZ's personal bathroom or a bathroom routinely used by the facility's residents. The bathroom locked from the outside.

During their shift, Grandberry and Bayer noticed that LZ was missing. At about 8:00 p.m., Bayer called LZ's family to determine if they had removed her from the facility. When the family said no, Grandberry and Bayer began searching the facility to locate her. They notified other administrators and employees of the facility, who joined the search. Eventually, Bayer and others found LZ on the floor of the bathroom in which Mims had placed her just before 3:00 p.m. An ambulance was called, and LZ was transported to the hospital. She was released the following morning with no physical injuries.

After LZ was found, the Executive Director of Harbour Village, Debra Barth, began investigating the incident. She immediately suspended Grandberry and Bayer pending the results of her investigation. Barth then collected statements from the employees who were directly involved in the incident, including Grandberry, Bayer, and Mims. Mims told Barth that, after she placed LZ on the toilet, she informed Bayer that she was leaving her

---

[1] The parties refer to LZ by her initials to protect her privacy. I will do the same.

2

shift and that LZ was still on the toilet and needed to be removed when she was done. Mims reported that Bayer nodded her head in acknowledgement and that Grandberry was nearby and should have heard what she had said. In his statement to Barth, Grandberry said that he did not know that LZ was in the bathroom. He said that he first noticed she was missing at about 4:45 p.m., after LZ missed dinner. Grandberry admitted that he should have "laid eyes on everyone." ECF No. 24-1 at 74 of 76. This was apparently a reference to the facility's policy of requiring staff members to observe or "lay eyes on" each resident at various points during their shifts.

After concluding her investigation, Barth determined that Grandberry and Bayer had noticed that LZ was missing early in their shift but did not begin to look for her until 8:00 p.m. Barth determined that Grandberry and Bayer should have looked for LZ as soon as they noticed she was missing. Barth then consulted Harbour Village's human-resources department and determined that Grandberry and Bayer should be terminated for waiting too long to begin searching for LZ. Barth did not terminate Mims because she did not think that Mims was lying about having told Bayer that LZ was in the bathroom. However, Barth gave Mims a warning and required her to be reeducated about not leaving residents' unattended bathrooms.

At the time of his termination, Grandberry was 56 years old. Bayer is Caucasian, and Mims is African American. The record contains no evidence regarding the ages of Bayer and Mims.

In the present action, Grandberry alleges that Harbour Village's decision to terminate him was based on his race and age. His federal discrimination claims arise under Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act,

3

and 42 U.S.C. § 1981. He brings duplicative claims for race and age discrimination under the Wisconsin Fair Employment Law. Grandberry also alleges that he was terminated in retaliation for opposing discrimination, in violation of Title VII, § 1981, and the Wisconsin Fair Employment Law. In his retaliation claim, Grandberry alleges that, during his employment, he complained about "inconsistencies" in his pay, *see* Br. in Opp. at 22, and that Harbour Village terminated him in October 2017 in retaliation for having made such complaints. He contends that Harbour Village's alleged retaliation is actionable under the anti-discrimination laws because Harbour Village "was unwilling to hear his complaints regarding unpaid wages because of his age and race." *Id.* at 23.

Finally, Grandberry brings a claim under the Wisconsin Wage Payment and Collection Law to recover the wages he believes he is owed for weeks in which he was suspended and did not work. This claim arises out of Harbour Village's decision to suspend Grandberry without pay while it investigated a coworker's claim that he had made sexually inappropriate advances towards her. The coworker made the complaint on July 22, 2016, and Harbour Village suspended Grandberry and initiated its investigation that same day. After completing its investigation, Harbour Village determined that no evidence supported the coworker's claim. It allowed Grandberry to return to work on August 6, 2016. Grandberry contends that Harbour Village was contractually obligated to pay him wages during the suspension even though he performed no work during that time.

## II. DISCUSSION

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

4

56(a). When considering a motion for summary judgment, I view the evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986).

**A.     Claims for Race and Age Discrimination**

Grandberry brings claims for race discrimination under Title VII and 42 U.S.C. § 1981, a claim for age discrimination under the Age Discrimination in Employment Act, and duplicative state-law claims for race and age discrimination under the Wisconsin Fair Employment Law. The parties agree that the same legal standards govern these claims, and that the sole issue to be decided is whether Grandberry has produced evidence from which a reasonable jury could conclude that he was terminated based on his race and/or age.

The parties structure their discussion of this issue using the burden-shifting framework created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the plaintiff must first establish a prime facie case of discrimination by showing: (1) he belongs to a protected class; (2) he met Harbour Village's legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly situated employee who was not in the protected class was treated more favorably. *See Gamble v. FCA US LLC*, 993 F.3d 534, 537 (7th Cir. 2021). If the plaintiff established a prima facie case, Harbour Village would then have the burden to offer a nondiscriminatory motive for its decision. *Id.* If it carried that burden, then the burden would shift back to the plaintiff, and he would have to present evidence from which a jury could reasonably conclude that Harbour Village's stated reason is a pretext for discrimination, meaning that

5

Case 2:19-cv-00689-LA    Filed 06/10/21    Page 5 of 16    Document 37

the stated reason is a lie. *See Marshall v. Indiana Dep't of Corr.*, 973 F.3d 789, 792 (7th Cir. 2020).[2]

The parties agree that Grandberry belongs to protected classes (he is African American and over 40, the age which triggers the ADEA's protections, 29 U.S.C. § 631(a)) and that he suffered an adverse employment action (termination). Harbour Village contends that Grandberry cannot satisfy the remaining elements of his prima facie case. It contends that he was not meeting its legitimate employment expectations when he was terminated because he lost track of a resident and then delayed initiating a search for her. Harbour Village also contends that Grandberry has not pointed to an employee of a different race or age who was similarly situated but received more favorable treatment.

Harbour Village's argument that Grandberry was terminated for losing track of a resident and not initiating a prompt search also serves as the nondiscriminatory reason it would offer in response to Grandberry's prima facie case. Because Harbour Village has offered a nondiscriminatory reason for the termination, I could skip the analysis of whether Grandberry has made out a prima facie case and proceed directly to the question of pretext. *See, e.g., Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 665 (7th Cir. 2007). However, I conclude that it is still useful to analyze whether Grandberry has made out a prima facie case. That is so because, as I explain below, he has clearly failed to identify a similarly situated employee outside of the protected classes who was treated

---

[2] I note that, in accordance with *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016), I will not separate the plaintiff's evidence into different "piles" using the "direct" and "indirect" methods. Instead, I will consider all the evidence in a single pile using the *McDonnell Douglas* framework.

6

better than he was. The lack of a more favorably treated comparator outside the protected classes makes it exceedingly difficult for Grandberry to show that Harbour Village's reason for terminating him was a pretext for discrimination. It also prevents him from making out a prima facie case.

The only employee who was similarly situated to Grandberry—Bayer—was also terminated. As I explained in the background section, Grandberry and Bayer were performing the same job on the same shift and were jointly responsible for keeping track of all the residents in their unit. Harbour Village determined that they both performed deficiently by failing to initiate a search for LZ the moment they noticed she was missing. Bayer is Caucasian, but her age is not in the record. Although Bayer's race puts her outside the protected class for purposes of Title VII, the fact that Harbour Village treated her the same as Grandberry prevents Grandberry from making out a prima facie case of discrimination based on how she was treated.

Grandberry argues that the assisted living associates who worked the earlier shift—Mims and Tatum—were also similarly situated, and he notes that they were not terminated. But a serious defect in this argument is that Grandberry has not presented evidence showing that Mims and Tatum are outside the protected classes. Mims and Tatum, like Grandberry, are African American, and thus Harbour Village's having treated them more favorably than Grandberry does not support a prima facie case of race discrimination. Further, Grandberry has offered no admissible evidence from which a jury could reasonably conclude that Mims and Tatum were substantially younger than him, as

7

would be required to make out a prima facie case of age discrimination.[3] *See O'Conner v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). Thus, even if Mims and Tatum were similarly situated, Harbour Village's treating them more favorably than it treated Grandberry would not give rise to a prima facie case.

Because Grandberry has not identified similarly situated employees outside the protected classes who were treated more favorably than he was, he has failed to establish prima facie cases of race and age discrimination. For this reason alone, Harbour Village is entitled to summary judgment on his race and age discrimination claims, and I do not need to consider whether Grandberry was meeting legitimate expectations or whether Harbour Village's nondiscriminatory reason is a pretext. However, for the sake of completeness, I will also address the plaintiff's pretext arguments.

As noted, Harbour Village states that it terminated Grandberry because he failed to initiate a search for LZ as soon as he noticed she was missing. Harbour Village terminated Bayer, who was similarly situated and Caucasian, for the same reason, and this all but forecloses any possibility of Grandberry's showing that the stated reason is a pretext for race discrimination. Grandberry contends that an inference of pretext is reasonable due to Harbour Village's more lenient treatment of Mims and Tatum. However, as I just explained, Mims and Tatum were the same race as Grandberry, and he has not shown that they were substantially younger than him. Thus, even if Harbour Village

---

[3] In his brief in opposition to Harbour Village's motion for summary judgment, Grandberry asserts that Mims and Tatum were "significantly younger" than him. Br. in Opp. at 17–18. But he cites no evidence that supports this assertion, and thus he has not carried his burden of production under Federal Rule of Civil Procedure 56(c)(1)(A).

8

treated them more favorably than it treated Grandberry, a jury could not reasonably infer that it did so because of race or age.

But even if I put this problem aside, Harbour Village's more lenient treatment of Mims and Tatum would not give rise to a reasonable inference of pretext. Although Tatum worked the shift prior to Grandberry's, she was not involved in the events that led to LZ's being left in the bathroom for five hours. Harbour Village thus had no reason to discipline her, and its failure to have done so is not suspicious. Mims was more directly involved in the incident, in that she was the one who left LZ unattended in the bathroom at the end of her shift. Harbour Village apparently considered Mims's actions inappropriate because it gave her a formal warning and required her to be reeducated about not leaving residents unattended in bathrooms. Grandberry finds it suspicious that Mims was not terminated like he and Bayer were. However, Harbour Village's decision to terminate Grandberry and Bayer but not Mims is not suspicious. Although Mims may have acted inappropriately by leaving LZ unattended in the bathroom, Barth believed her when she said that, before she left for the day, she told Bayer that LZ was in the bathroom and received a nod from Bayer in response. Harbour Village could reasonably deem Grandberry's and Bayer's failure to promptly search for LZ once they noticed she was missing a more serious offense than Mims's leaving LZ in the bathroom but informing Bayer that she was there. Grandberry second-guesses Harbour Village's judgment in imposing penalties for these different offenses, but a federal court considering a discrimination claim does not sit as a "super-personnel department" that determines whether an employer made the right business judgment. *See Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 570 (7th Cir. 2017). Here, Harbour Village drew a rational line when it terminated Grandberry and

9

Bayer but not Mims, and there is no evidence that race or age played any part in its decision.[4]

Grandberry also contends that a jury could deem Harbour Village's stated reason pretextual because Barth allegedly testified during her deposition that the facility's formal missing-resident procedure was "loosely enforced in practice." Br. in Opp. at 12. But Barth never testified that the procedure was loosely enforced. Instead, she admitted that, after staff members began the search for LZ, they may have performed some of the steps of the procedure out of order. For example, she testified that the procedure required staff to notify senior administrators that a resident is missing before calling the police, and that in LZ's case, the police were called before senior administrators were notified. *See* Barth Dep. at 49:12–51:5. In any event, Barth testified that Grandberry was not terminated for performing the steps of the missing-resident procedure out of order; instead, he was terminated for failing to take any action to determine LZ's whereabouts until she had been missing for nearly five hours. *Id.* at 48:18–48:23, 50:11–50:15. Nothing in Barth's testimony suggests that Harbour Village loosely enforced its policy of requiring employees to keep track of residents and promptly initiate searches for those who may be missing. Thus, Barth's testimony about the missing-resident procedure is not evidence of pretext.

Finally, Grandberry faults Harbour Village for failing to recognize that LZ's family had requested that only female staff members assist her with personal matters such as

---

[4] Relatedly, Grandberry contends that Harbour Village acted suspiciously by choosing not to interview Tatum as part of its investigation into the incident. But Mims rather than Tatum placed LZ on the toilet, and no evidence in the record suggests that Tatum, whose shift ended five minutes after LZ was placed on the toilet, had information that would have been relevant to the investigation. Moreover, deciding whom to interview was a matter within Harbour Village's business judgment, which I cannot second guess.

10

bathing, changing, and using the bathroom. Br. in Opp. at 10–11. However, it is not clear why he thinks this "females only" policy supports his claim that Harbour Village's reason for terminating him is pretextual. Harbour Village's reason for terminating him was that he noticed LZ was missing but failed to initiate a search for her until several hours later. The "females only" policy did not preclude Grandberry from searching for LZ once he noticed she was missing or excuse his delay.

For these reasons, I will grant summary judgment to Harbour Village on Grandberry's claims for race and age discrimination under Title VII, the ADEA, 42 U.S.C. § 1981, and the Wisconsin Fair Employment Law.

**B.** **Retaliation**

Grandberry brings retaliation claims under Title VII, 42 U.S.C. § 1981, and the Wisconsin Fair Employment Law. *See* Compl. ¶¶ 35, 38 & 43. In his brief, he discusses all three claims simultaneously and applies only federal law. *See* Br. in Opp. at 21–23. Thus, I will discuss only federal law and assume that the result under the Wisconsin Fair Employment Law would be the same.

To survive summary judgment on a retaliation claim, the plaintiff must produce evidence that (1) he engaged in statutorily protected activity, (2) he suffered an adverse employment action, and (3) there was a causal connection between the two. *See, e.g., Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017). Grandberry suffered an adverse employment action when he was terminated. But Harbour Village contends that Grandberry has no evidence that he either engaged in statutorily protected activity prior to his termination or that, if he did, Harbour Village terminated him for having engaged in that activity.

11

Grandberry contends that he engaged in protected activity when he complained about "wage disparities." Br. in Opp. at 22. However, he does not precisely identify the wage disparities at issue, other than to state that he began noticing "inconsistencies after being placed on a three-week suspension pending an investigation regarding allegations made against him in the workplace." *Id.* Although, as discussed below, Grandberry brings a claim to recover wages he contends he was owed for the period in which he was suspended and not working, those wages do not appear to be the basis for his retaliation claims. Instead, his retaliation claims seem to be based on his having complained to his supervisors that he was not paid for all the hours that he worked. *See* Grandberry Dep. at 106:4–108:18, 114:8–115:2. Thus, I will construe his retaliation claims as alleging that he was terminated for complaining to Harbour Village that he was not paid for all hours worked.

A complaint about not being paid wages is not protected activity under federal law unless the complaint alleges that the wage disparity was based on race, age, or another federally protected trait.[5] *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663–64 (7th Cir. 2006); *Miller v. Am. Family Mu. Ins. Co.*, 203 F.3d 997, 1008 (7th Cir. 2000). Grandberry does not point to evidence indicating that he told Harbour Village that he believed its failure to pay wages was related to his race, age, or another protected class.

---

[5] A provision of the Wisconsin Fair Employment Law makes it unlawful to retaliate against an employee for filing a complaint under, or attempting to enforce, the Wisconsin Wage Payment and Collection Law. *See* Wis. Stat. § 111.322(2m)(a). However, Grandberry has not asserted a claim under this provision or argued that it renders his complaint about wages protected activity for purposes of his other retaliation claims. Thus, Grandberry has waived any reliance on this provision. *See, e.g., Betco Corporation, Ltd. v. Peacock*, 876 F.3d 306, 309 (7th Cir. 2017).

Instead, he states in his brief that he "believes that [Harbour Village] was unwilling to hear his complaints regarding unpaid wages because of his race and age." Br. in Opp. at 23. But even if this were true, it would not show that he made a complaint about race or age discrimination. Grandberry's unstated belief that he was subject to discrimination cannot form the basis of a retaliation claim because an employer cannot retaliate against an employee for believing something he never communicated. *See Miller*, 203 F.3d at 1008 ("An employee can honestly believe she is the object of discrimination, but if she never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints."). Grandberry produces no evidence indicating that he told anyone at Harbour Village either that he believed he was not paid for all hours worked because of his race or age or that Harbour Village disregarded his complaints about his pay because of his race or age. To the contrary, he admitted during his deposition that he never complained to Harbour Village about discrimination during his employment. Grandberry Dep. at 111:5–111:14, 112:1–112:4. For this reason alone, Harbour Village is entitled to summary judgment on his retaliation claims.

Moreover, Grandberry produces no evidence at all that supports his claim that his termination was causally connected to his prior complaints about his wages. The evidence clearly shows that Grandberry was terminated for his conduct relating to the LZ incident. Thus, even if Grandberry's complaints about his wages were statutorily protected, Harbour Village would still be entitled to summary judgment on his retaliation claims.

13

## C. Claim for Collection of Unpaid Wages

In his remaining claim, Grandberry seeks to recover the wages he contends he was due for the period in which he was suspended while Harbour Village investigated a complaint of sexual harassment made by his coworker. This claim arises solely under state law, specifically the Wisconsin Wage Payment and Collection Law. Grandberry asserts that I may exercise supplemental jurisdiction over this claim, *see* Compl. ¶ 9, and Harbour Village has not disagreed with his assertion. However, because I have an independent obligation to police my own jurisdiction, *see Baez-Sanchez v. Sessions*, 862 F.3d 638, 641 (2017), I must first consider whether Grandberry's wage-collection claim falls within the court's supplemental jurisdiction.

Supplemental jurisdiction may be exercised only if the state-law claims "are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims form part of the same case or controversy when they "derive from a common nucleus of operative fact." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 683 (7th Cir. 2014) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). The Seventh Circuit has observed that this is a vague standard that does not dictate the solution to any case, but that a more definitive formulation has been elusive. *See Prolite Building Supply, LLC v. MW Manufacturers, Inc.*, 891 F.3d 256, 258 (7th Cir. 2018). Thus, a court must apply the "nucleus of operative facts" standard as best it can. *Id.*

Here, I conclude that Grandberry's claim for wages for the period in which he was suspended pending his employer's investigation into the sexual-harassment complaint does not derive from the same nucleus of operative facts as his federal discrimination

14

and retaliation claims. The events giving rise to the wage-payment claim occurred in late July and early August of 2016, when the suspension occurred. The events giving rise to the discrimination and retaliation claims occurred primarily in October 2017, when Grandberry was terminated. It is true that the retaliation claim also involves the earlier complaints that Grandberry claims to have made about his pay. But as I explained in the prior section of this opinion, those complaints did not relate to Harbour Village's failure to pay wages during the suspension. Instead, they related to Harbour Village's alleged failure to pay Grandberry for hours he actually worked. Thus, there is no factual overlap between the wage-payment claim, on the one hand, and the discrimination and retaliation claims, on the other. The only connection among the claims is that they all arose out of the same employment relationship. But if the only relationship among claims is that they share a common origin, then the claims cannot be said to derive from a common nucleus of fact. *See Citizens Marine Nat'l Bank v. U.S. Dep't of Commerce*, 854 F.2d 223, 227 (7th Cir. 1988).[6] Accordingly, I must dismiss the wage-payment claim for lack of jurisdiction.

In case I am mistaken about whether the wage-payment claim falls within the court's supplemental jurisdiction, I add that, even if I could exercise supplemental jurisdiction over the claim, I would decline to do so because I have dismissed all claims over which the court had original jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

---

[6] Although *Citizens Marine* was decided prior to passage of the supplemental-jurisdiction statute, it applies the same "nucleus of operative fact" standard that courts use to decide cases under the statute. Thus, *Citizens Marine* remains instructive.

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that Harbour Village's motion for summary judgment is **GRANTED**. Judgment shall be entered in favor of the defendants on the merits with respect to plaintiff's discrimination and retaliation claims. Plaintiff's claim for unpaid wages under the Wisconsin Wage Payment and Collection Law shall be dismissed without prejudice for lack of jurisdiction.

**IT IS FURTHER ORDERED** that the Clerk of Court enter final judgment.

Dated at Milwaukee, Wisconsin, this 10th day of June, 2021.

s/Lynn Adelman<br>
LYNN ADELMAN<br>
United States District Judge